Good morning. It is always good to be here in Pittsburgh. I know that my colleagues, Judge Manaski and Judge Schwartz, feel that way. In fact, I hope he doesn't mind, but Judge Manaski recently in an email referred to Pittsburgh as my favorite Pennsylvania city and my favorite Third Circuit city. Which resulted in the kind of outlandish response, what about Newark? A question I've often asked, what about Newark? But I'm particularly glad to be here. For me, it's like old homework week being back in Pittsburgh. It's great to be in this courtroom and see so many faces I know, I won't say from the old days, but from a few years past. The first case we have listed for this morning is United States of America v. Akeem Abdul-Caldwell. Ms. Pietropalo? Good morning, Your Honors. May it please the Court, my name is Renee Pietropalo and I represent the appellant Akeem Caldwell. With the Court's permission, I'd like to reserve three minutes for rebuttal. Granted. The police in this case testified that Akeem Caldwell had a gun in his hand. The defense from Akeem was that he did not have the gun in his hand. In his trial for being a felon in possession of a firearm, based on evidence of actual possession, the trial court erred by admitting under Federal Rule of Evidence 404B, evidence that Mr. Caldwell was previously convicted six years earlier in 2006 of the identical federal offense of being a felon in possession, and seven years earlier in 2005 of the state offense of carrying firearms unlawfully. This is a case of they said, he said. Exactly. It's a factual issue set up in the first instance by the government through how they introduced their evidence that he had, Caldwell had, actual possession of a firearm. Yes. Caldwell says, I didn't have actual possession of a firearm, I was holding a cell phone. Now, if that is the way the evidence lines up, why doesn't the Third Circuit's decision in Lee really nail this 404B issue for you? Lee actually does nail the 404B issue for me. Lee says exactly that. When evidence is actual possession and the defense is a straightforward denial of possession, simply saying I had nothing to do with the gun, the prior gun possession is simply not admissible under 404B to show knowledge and intent. And the reason is, you know, the court, both the majority and the dissenting opinion in that case, actually set forth the same rationale. The trial is not about whether the defendant knew he had a gun. In that case, it was in the back seat. There's no question of accident or mistake raised by the defense. What was the proffer that the government made? A frequent problem in these cases, as you know from reading our cases, is that the proffers are often mere recitations of the language of Rule 404B, and I'm not saying that's what happened here, but they kind of invite a judge to pick and choose what basis under 404B would support the admission of 404B matter. What did the government seek to use this prior conviction for? What chain of inferences did it set out as basis for admission, and what was the district court's ultimate basis for its ruling to admit? The government originally said that the defense was an absence of mistake, and the court rejected that out of hand. She said it was never absence of mistake. Did the government ever explain what the mistake was? The mistake about what? They were never able to articulate it, and the court rejected that correctly out of hand, saying it's never absence of mistake. And let's clarify here. We got two transcripts. Yes. This was a retrial. Yes. We are really required, are we not, to spend a lot of time with a transcript from trial number one that resulted in a hung jury, and tie that to the ultimate ruling in the second trial, which is what gives rise to this appeal. The primary reason for that is that the second trial, the court said, when it came time for the admission, or a proposed admission, the government said, Judge, I think this is the time when you have to tell us which conviction comes in and under which rule. And the judge said, I know what your arguments are because I heard them before. So, yes, you're correct. We need to go back. And her ruling on the 404B was that the writers could come in to show knowledge and intent simply by claiming innocence. She was really skeptical, though, of the proffer up until the point that she took a recess, wasn't she? She was. And it was strange in some sense, but she accepted the government's position that by claiming innocence you put your knowledge at issue. You know, knowledge wasn't at issue in this case. Is that right? No. It's not right. And it definitely wasn't right in this case where we're talking about an actual possession. Knowledge is subsumed within the actual possession. Knowledge of what? Knowledge that he had a gun in his hand. If the prosecution is eyewitness testimony, we saw him with a gun in his hand. The government is armed with a presumption that you intend the natural consequences of your actions unless the defendant comes forward with the defense of, for example, mistake. But then you may have impeachment purposes for using the evidence. 404B matter can go in during the government's case-in-chief, right? Yes. And that was the original request. The court correctly held an abeyance and said it's not going to come in the case-in-chief. It might come in depending on how the defendant testifies. His testimony was consistent with the original proffer, which is I didn't have it. I don't know anything about it. Now had his testimony been something different, like I've never in my life held a gun, then it could be admissible and it's really not 404B. But then it's impeachment matter. Exactly, with the prior contradiction. But that wasn't the defense here. The defense also wasn't I didn't know the thing in my hand was a gun. Again, that would raise a whole different series of questions. Of course, a prior conviction might be relevant to show you know what a gun looks like, don't you? And Lee really sets it out clearly. The defenses or the principles that knowledge and intent are the legitimate reasons, the court rejected it saying those hold no water. The defense is not about whether he knew what was in his hand was a gun. The defense was about did he have it or didn't he have it? Do we believe the police or do we believe the defendant? What about the 609 issue? You didn't spend much time when you briefed on that, but it is an alternate basis for admission here. If there were a basis in the record for it, the court, yes, there's the principle that you can affirm on any basis. But here the government did not seek to have this admitted under 609. The court actually ruled she went through the 609 argument. She said, well, you're asking for the other convictions to come in under 609. The government, she saved the position. There was no contradiction. The other convictions were trespass, escape, animal cruelty conviction. And the court said these convictions are extremely prejudicial under 609 and I'm not going to let them in. So implicit within that ruling is a recognition that the gun conviction in a gun case would have to be more prejudicial, certainly than an animal cruelty conviction would be. Now the admission of the prior conviction in this case came at the very end of the cross-examination. It did. And was a brief reference to it. Why, if there was error here, isn't it harmless? It's not harmless. It's the fact of the nature of the conviction. A prior felon possession conviction and another gun possession conviction in a gun case. So it's the nature. But in terms of harmlessness, I mean, in my brief I go through this as the test for harmless, of course, is not whether the evidence is otherwise sufficient to support the conviction. It's can the Third Circuit have a sure conviction that the error, that the erroneous admission of this 404B evidence did not affect or influence the jury. And some of those reasons are, of course, what is set forth in the brief, that this was completely a matter of credibility. There's no physical evidence tying the defendant to this weapon. But one of the key points is the use to which the government permits the 404B. And in the closing of the second trial, the government specifically invited the jury, told the jury you should consider the fact that he has two prior gun convictions in assessing Mr. Caldwell's credibility. And what this is is a request that the jury believe the police officer's story. It's shoring up the police officer's story and saying disbelieve the defendant because he's got these two priors. But isn't that the purpose of 609? 609 allows you to do that, doesn't it? First, it wasn't admitted under 609. The court really said during the original trial, she said, let me be clear, I am not admitting this, the nature of the convictions, for credibility. She was explicit. It couldn't have come in, so it didn't come in under 609. She ruled the other ones, and I'm talking again about escape and animal cruelty, were too prejudicial under 609. And had it come in under 609, really, it would have been an instruction to consider the fact of conviction for impeachment, not the nature, and that's what makes it so serious. Can we make anything from the fact that the first trial ended with a hung jury? I actually asked my clerks to try to find cases on that question, and they were not able to find anything. But in this rather broad inquiry of whether or not an error of admission of 404B matter is harmless, can we add to the equation the fact that a jury on these facts, and we know what they heard because we have a transcript of it, had difficulty in the first trial and couldn't convict Mr. Calderon? I think that's clearly a factor. They heard the same evidence at the first trial, and they weren't convinced. We don't know how the jury was divided on the first trial. Absolutely, you're correct, Your Honor. The first trial, however, the government didn't make any argument about using the guns for propensity. That would have been an improper argument given the court's rulings. There was no way saying it can come in under credibility, and had it come in, it would have been, again, for this limited purpose. At the second trial, we know that the government did explicitly ask the jury to consider the fact that there were two prior gun convictions in a gun case to disbelieve the defendant's version, which is clearly propensity, and that really is the most significant difference, and that adds to the idea that we can't have a sure conviction that the admission and erroneous use of the 404B evidence had no effect on the jury. Could I just ask about the Tigney confession? Yes. The record demonstrates a recantation by him at some point. Do you know when that was? Was it after he was charged? The court didn't make a finding on that. We can infer from reading the record, we know that the judge admitted it preliminarily at the first trial. The day, I think it was the morning trial was going to start, the government asked her to reconsider that ruling and filed a brief in support of that. Had he recanted before that, that most certainly would have been part of the government's argument to shore up its reasoning, to shore up its request for her to reconsider her initial ruling. The testimony from the AUSA, I call it testimony, it's just a statement from the AUSA in advance of the trial. It was an earlier recantation. The defense attorney said that's not his record. He was not aware of any recantation. It's really the timing of the recantation that's critical to the 803 issue. The court viewed the recantation as evidence that the Tigney wasn't credible. And in the statement against interest context, what you need to look at is not so much whether the declarant was credible, but whether there are circumstances that indicate the trustworthiness of the statement. And the circumstances surrounding the recantation itself demonstrate that the initial confession was the reliable version. Thank you. Thank you very much, Ms. Pietropalo. We'll have you back on the phone. Thank you. Mr. Ivory. Good morning, Your Honor. How are you today? Fine, thanks. How are you? So far, so good. All right. And we'll try not to do anything to interfere with that. Let me start with the question that I asked Ms. Pietropalo, and that is, why isn't Lee game, set, and match for you here? I mean, it seems to be this case. You know, we have in Lee our court squarely addressing in an actual possession case a defendant's prior acts regarding guns as whether or not they're admissible to share knowledge. Well, we said they weren't admissible. Lee never testified. And in Lee, the 404B evidence was introduced in the government's case in chief. What difference? Whether it comes in the government's case in chief, whether it comes in at any other time, it still has to meet 404B requisites. It's not an impeachment matter. Also, if you look at Lee, Lee was more than a denial of possession. Lee denied the existence that a gun was ever present in the car. So there's a big difference. In this case, Mr. Caldwell denies that he ever had possession of a gun. Caldwell said, I didn't know about the gun. When he was being arrested, he testifies at page 500 of the appendix. I didn't know about a gun. Now, he said, I don't know. That's a lack of knowledge. Isn't that the same thing as saying he didn't have it? I mean, isn't that a direct implication? He also said that he never possessed a gun, that he didn't bring it to the scene, that he didn't know about the gun, and that he had a cell phone in his hand. So that's different. Because he puts his knowledge, I don't know, into evidence. And the prior convictions are cross-examination fire because it tends to make that less of a problem. How does it tend in anything other than propensity? Because he has a prior conviction, a prior felon in possession conviction, that that past makes it more relevant that today this is a gun that he had in his hand and not a cell phone. It also makes it more relevant that the claim of lack of knowledge is not credible. Where did you or where did the government make out the kind of chain of logical inferences in their proffer that our Sampson precedent, which goes all the way back to 1992, required? I'm aware of that case. Yes, Your Honor. Well, I'm glad you're aware of it because the more I work on 404B cases, the more I've concluded that most people have amnesia about the Sampson case. Well, I don't think that's necessarily true. But we did argue in our response to the defendant's motion to eliminate that it was admissible with respect to the knowledge of intent as well as... But that's not a chain of inferences, is it? No. No one of which can be propensity. It does lay the groundwork, however. And prior to the admission of the testimony, there was discussion between defense counsel, the trial assistant, and the district court. And the district court ultimately held that it was admissible for purposes of knowledge and intent based upon Mr. Coswell's testimony. I mean, up until that point, you know, we had agreed not to seek it, to reference it in our opening argument. Why? I mean, if it is relevant to show knowledge, why wasn't it relevant in your case in chief? Because up to the point when Coswell testifies, it was propensity evidence until that point. But when Coswell testifies, I don't know about this. I didn't know about the gun. It changes. It changes the whole... The gun. That gun. It has nothing to do with the gun he was in possession of years before. But it does show his knowledge that there was a gun, or it does tend to make less credible his claim that I didn't know there was a gun. Now wait a minute. Now you've elided into credibility, which is not what 404B is about. 404B is about anything except propensity. You can use it for whatever purpose. You can use it for prostitution. I thought it actually enumerated a series of proper admissibility purposes. It's not as broad as you're suggesting. That list is not exhaustive. I mean, this Court has consistently said that. In the Sampson decision, it says it's admissible for any reason other than propensity so long as it's relevant, so long as the government articulates a chain of reasons, and so long as the district court provides a limiting instruction or instructs the jury the purposes for which it could be considered by the jury, which is what it did in this case. The court told the jury on three separate occasions that it could not be considered as substantive evidence of the defendant's proof of guilt, but that it could only be used for knowledge and intent. So up to the point when Caldwell testifies, that changes the nature of the propensity evidence in this case. It makes it evidence tending to discredit the claim of knowledge. If we were to find that it was error to admit the prior conviction, should we take into consideration the fact that the jury hung the first time in our harmless error analysis? We don't know why the jury hung. You know, I looked at the several questions that the jury passed to Judge Ambrose, and that was the, I think there were six or seven questions. There's no indication in those notes as to why the jury wasn't able to reach a conclusion. But, Mr. Ivory, this was, as I said in questioning Ms. Patrick-Powell, I mean, this was a they-said-he-said case. Very, very simple, and it didn't take long to try either, did it? I mean, either he held a gun in his hand as the officers observed and testified, or he didn't, or held something else. You couldn't find many cases that have a more discreet, well-defined issue of yes or no than this one, could you? It was a credibility determination. There were three eyewitnesses who said, you know, we saw, well, two saw him with a gun in his hand. All three of them saw him drop the gun. You have the defendant testifying, I never heard the gun fall. I didn't know there was a gun there. I had no knowledge of the gun. Before we talk more about harmless error, what about the 403 analysis here? There really wasn't much of a 403 analysis. In fact, the government had to remind the district court to conduct a 403 analysis, and that was pretty abbreviated. At page 527, the district court did say the 403 analysis is there. I mean, could it have been more elaborate? Of course it could have been more elaborate. Was it sufficient? Yes. I mean, the court found that the prerogative value outweighed any prejudice. So I don't know what more the court could do. Well, explain why. I mean, that's nothing more than a reiteration of what 403 language requires, right? Well, that's true, but this court— So it's conclusory, but it's not analytical. Well, I think whenever you look at what was discussed at the proper prior to the 403 analysis, as well as when you consider the evidence of record that was in there, including Caldwell's testimony, I mean, clearly the court was of the opinion, the correct opinion, that it was a prerogative of knowledge and intent. And it might have pretty much used a thumbnail sketch when it encapsulated that in its rule 403 analysis. Can we talk about the 609 argument? Yes. Because this also segues into the 403, because the test is slightly different, that balance. So tell me where, in response to your adversary's representations, that we really shouldn't go into 609. The court was not allowing—the district court, that is—wasn't allowing this evidence to be used under 609. Is that your understanding of O'Connor's decision? Well, the interesting thing is the court admitted the prior convictions under Rule 404B. However, at page 549 of the appendix, the district court gave a Rule 609 credibility instruction concerning the use of the prior convictions, that it could be used only for purposes of determining Mr. Caldwell's credibility. So although the court admitted the evidence under Rule 404B, it nevertheless instructed the jury that it could consider that for impeachment purposes. And the government, in its closing, also said that it could be used to determine Mr. Caldwell's credibility. So it may be a situation where the evidence was correctly admitted, but maybe not under the correct rule. Now, I did argue in my brief that it was admissible under 609. And I think whenever you consider the evidence under Bedford, that the evidence should have been admitted under 609. And, in fact, since the jury was instructed that it constituted 609 evidence—although the court didn't say 609, it just used this court's standard jury instruction—saying that it could consider it for admissibility, the convictions would come in under Rule 609. But let's talk about what Bedford says. I mean, what are the three prongs of Bedford for admissibility? How does this match that? Well, the first is the similarity between the crime of conviction— The kind of crime involved. How does that play here? The crimes are identical. However, this court in United States v. Murphy, I believe, once said— However suggests that's a potential problem under the Bedford analysis. And then you have to look at the remaining three factors, which is the importance of the testimony, the witness's testimony to the case, as well as the defendant's credibility. And Mr. Codwell's testimony was the linchpin of the defense. I mean, sure, you had the one witness, Manley, who said, oh, yeah, I saw the police officers with the cell phone. And you had the defendant's girlfriend saying, I was talking with him when he was on his cell phone. But, I mean, it was Mr. Codwell's credibility that was central to the defense in this case. And in situations where the defendant's credibility is central, the fact that the conviction, the prior conviction and the crime charged are similar gives way to the jury's need to determine credibility in this case. It was pretty important to Mr. Codwell, too, right? That's correct. What about the balancing test under 609? It's a little bit different than the 404B balance, and we heard some questions about whether that was detailed enough. How do you address that issue here? It is different. It's a subtle distinction, but Judge Ambrose, when she admitted the evidence, she said that it outweighs any prejudice.  I think the court's determination that it outweighed any prejudice satisfies the purposes of Rule 609. The Tigbee confession. Do you know anything, can you offer us anything more from the record in terms of the sequence of when the recantation occurred? According, this is based upon the record, obviously, but on April 16, 2012, Tigbee calls the public defender's office and admits that he, not the defendant, possessed the gun on January 24, 2012. That's in the defendant's initial pleading, where he sought to have Tigbee's statement submitted under Rule 804B3, as well as the request for defense witness immunity. There was an interview that's attached as an exhibit to that document. In May of 2012, Tigbee recants. That information can be found at pages 349 through 51 of the appendix. Counsel was also informed that Mr. Tigbee would assert his Fifth Amendment right of subpoena. Seven months later, we have a motion for defense witness immunity in the request under Rule 804B3. That's at pages 97 through 109 of the appendix. It's interesting that the district court was informed about Mr. Tigbee's intention to assert the Fifth. There was no mention about the recantation that occurred in May. Again, as Ms. Pietropalo acknowledged, the court initially admits the statement, but reversed its ruling after the government filed a motion to reconsider. November 14th of 2012, Mr. Cottle again seeks the admission of Mr. Tigbee's statement under the hearsay exception. That's at pages 165 through 169 of the appendix. Again, there was no mention of the recantation. There was a mistrial that was declared December 3rd, 2012. There was a motion to have Mr. Tigbee's statement again admitted under 804B3. And again, there was no mention of the recantation. And the following day, the district court learned from the government about Mr. Tigbee's recantation. That was based upon an interview that had occurred between the government and Mr. Tigbee. So the recantation happened before Trial 1, but the government didn't learn about the recantation until Trial 2? That's my understanding, yes. But the recantation, and there is evidence, facts of record to support that, which occurred in May. So it was a month after he gave the admission. Okay. And in your brief, you suggest that this court has to apply plain error? It appeared to my review of the record that the positions of the parties were well preserved. And so are you back on that? That's correct. I would back off that position. I think it would have to be the standard review in this case. Thank you. So I think the Tigbee evidence was correctly and properly found not to be trustworthy, following the totality of the circumstances. I set forth those reasons in my brief, and I would stand by those, you know, especially the recantation. You know, that seems to be the key element that the courts look at, as to whether or not the declarant has been consistent in his admission. And in this case, he was not consistent in his admission. In fact, the only consistency I see is that they consistently tried to get this in under an exception to the hearsay rule. So I would like to talk about harmless error, Judge Smith. Again, if the court finds that the district court erred in admitting the Rule 404B evidence on cross-examination of Mr. Codwell, any such error would be harmless under the circumstances. You had two eyewitnesses who saw the defendant hold the gun. All three of them saw him drop the gun. You have the admission of a conviction of the identical crime for which the defendant was on trial. Well, that doesn't factor into the harmless error. You have to look at that, but you also have to consider, too, that the jury was aware, based upon the stipulation, that Mr. Codwell was already a convicted felon. They don't know of what? That's true. That's true. That is a substantial distinction. Under a harmless error analysis, I don't believe so, but... It's a substantial legal distinction. Well, also you have to take into account what the district court did in this case, in terms of limiting the instructions. On four separate occasions during the court's closing final charge to the jury, it instructed the jury, you can't consider these convictions as substantive evidence of guilt. She said that four times. And the government did not emphasize the nature of the prior conviction during its closing argument to the jury, and it was admitted on cross-examination for purposes of cross-examination to defeat a claim of lack of knowledge. If there are no further questions, I would respectfully request that this court affirm the judgment of conviction. Thank you very much, Mr. Ivory. Ms. Petropalo, rebuttal. And let me return you to that statement alluded to during your argument by the district court, saying that Codwell put knowledge at issue by claiming innocence. I'm still grappling with that. What do you think the district court meant? I think that the only way it's at issue by claiming innocence is if you, again, make the propensity argument. I think that she was just, what she said was, because it's a specific intent crime and you claim innocence, you're putting your knowledge at issue. We know it's not a specific intent crime. We know it's an actual possession. We also know that in our 404B regime, and I'm sure you would agree with this, that the defense can't control, by virtue of its theory of defense, what the government has to prove and what the government has a right to prove, including under 404B in its case in chief, right? I agree. So that must stand on its own. But what this seems to suggest is that the equation changes somehow, perhaps by virtue of the defendant taking the stand. It doesn't. The idea of the stipulation, that's really a red herring in this case. It's not the stipulation. It's not that he was willing to stipulate to whoever had the gun, had it knowingly. That takes knowledge out of the equation. The case itself took knowledge out of the equation. The government's case was actual possession, eyewitness testimony, and the defense had nothing to do with knowledge. The jury could never have found he had it in his hand, but didn't know it was a gun under the evidence that was presented. And moreover, to the extent that technically one can say the government has to prove knowledge, the government was already proving that with three witnesses who in their direct testimony say, you know, we saw a gun. I guess two of them actually saw him hold a gun. Yes, two saw him holding it. And that is the knowledge that's at issue. And knowledge wasn't put at issue in any other way through the defense. It could have happened that by testifying he put his knowledge at issue. My point is that the government wasn't being denied an opportunity to put in any evidence about knowledge. They'd already put in substantial evidence. It had. And they point to the testimony of the defense as putting knowledge at issue, but Lee is directly on point, and the testimony in Lee from the defendant, which came in through the officers, was not materially different from the testimony in this case. It's a straightforward denial. I had nothing to do with the gun. It's no different. This court held in an actual possession case where it's straightforward denial. You can't admit 404B in Lee. The D.C. Circuit, Fifth Circuit, and Sixth Circuit in Bell have held the same. To my knowledge, no circuit has held to the contrary. And so this court would be joining and following its precedent. With the 609, if I could just say briefly, it wasn't admissible under 609. There was no balancing test. What this court has said with respect to the Bedford factors and the similarity is in Hans 738F2nd88. This is in our briefing. For a conviction to be admissible to impeach, the government bears the burden. The court disfavors the use of similar acts, recognizing that the similarity between the prior conviction and the charge defense cuts against admissibility and invites the propensity evidence that we're all so worried about. And the instruction that was given, it was improperly given regarding the 609B. And the fact that instruction was given, tracking the standard instruction and telling the jury you can consider the fact of a prior conviction is very different from considering the nature of the prior conviction for credibility, which is what the government argued. So that instruction could never cure the 404B error because the jury only hears about the nature because of the 404B error. All right. Thank you very much, Ms. Payette-Powell. Thank you to both of counsel, Ms. Payette-Powell and Mr. Ivery, for your very helpful arguments and for this well-briefed case. We'll take it under advisement.